IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARLETTE E. GILBERT,

        Plaintiff,                       NO.  CIV S-06-0825 DAD

       vs.

MICHAEL J. ASTRUE,[1]              ORDER
Commissioner of Social Security,

        Defendant.
_____/

        This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.  For the reasons explained below, the decision of the Commissioner of Social Security (Commissioner) is reversed and this case is remanded with the direction to grant benefits.

**PROCEDURAL BACKGROUND**

        On February 20, 2003, plaintiff Arlette Gilbert applied for Social Security Disability Insurance benefits under Title II of the Social Security Act (Act), alleging an onset of disability date of September 17, 2001.  (Transcript (Tr.) at 14, 64-66.)  The Commissioner denied

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this action.

plaintiff's application initially and on reconsideration. (Tr. at 47-56.) Pursuant to plaintiff's request, a hearing was held before an administrative law judge (ALJ) on December 14, 2004, at which time plaintiff was represented by counsel. (Tr. at 321-81.) In a decision issued on March 23, 2005, the ALJ determined that plaintiff was not disabled prior to March 2, 2003. (Tr. at 10-27.) The ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's post traumatic degenerative osteoarthritis o [*sic*] the left shoulder, status post left rotator cuff repair, and beginning January 13, 2005 mood disorder secondary to chronic pain with depressive-like features, and borderline intellectual functioning, are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4.
>
> 5. Her subjective complaints are credited as discussed in the body of this decision.
>
> 6. The claimant has the following residual functional capacity: lift 10 pounds, work with left arm close to body, walk/stand six hours, sit six hours, occasionally climb and crawl but avoid climbing ropes/ladders/scaffolds, avoid overhead reading [*sic*] on the left, and avoid moderate exposure to working at heights and around moving machinery, and that she had no other postural, manipulative or environmental limitations and no communicative or visual limitations or mental limitations prior to January 13, 2005. Beginning January 13, 2005 she has the same exertional limitations but mentally she would not be able to perform unskilled work.

/////

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565).

8. The claimant is of advanced age but was closely approaching advanced age prior to March 2, 2003 (20 CFR §§ 404.1563).

9. The claimant has a high school education (20 CFR § 404.1564).

10. The claimant has no tranferable [*sic*] skills from any past relevant work (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform substantially all of the full range of light work prior to March 2, 2003 (20 CFR § 404.1567).

12. Although the claimant's limitations do not allow her to perform the full range of light work prior to March 2, 2003, using Medical Vocational Rule 202.11 as a framework for decision-making, there were a significant number of jobs in the national economy that she could have performed. Examples of such jobs included work as a charge account clerk with 5,000 in California and 43,000 nationally, information telephone clerk with 6,000 in California and 52,000 nationally, and food order clerk with 50,000 in California and 570,000 nationally.

13. The claimant's capacity for light work was substantially intact and had not been substantially compromised by any nonexertional limitations prior to March 2, 2003. Accordingly, using the above-cited section as a framework for decision-making, the claimant was not disabled prior to March 2, 2003.

14. Based on exertional capacity for light work and her vocational factors beginning March 2, 2003, a finding of disabled is directed by medical-vocational rule 202.06. She would also be found disabled beginning January 13, 2005 due to her inability to perform all the basic mental demands of unskilled work (see SSR 85-15).

15. The claimant has been under a "disability," as defined in the Social Security Act, as of March 2, 2003 (20 CFR § 404.1520(f)).

(Tr. at 26-27.)

3

Plaintiff requested review of the ALJ's decision, but the Appeals Council declined review on May 20, 2005. (Tr. at 5-7.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 17, 2006.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (Substantial evidence "is more than a mere scintilla but not necessarily a preponderance.").

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal

/////

Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances four main arguments in her motion for summary judgment.  First, plaintiff asserts that the ALJ's decision mischaracterizes the medical evidence and improperly rejects the opinions of her treating and examining physicians, as well as those of agency physicians.  Second, plaintiff argues that the ALJ failed to consider all of her impairments at step two of the sequential evaluation.  Third, plaintiff contends that the ALJ failed to credit her statements regarding the nature and extent of her functional limitations.  Finally, plaintiff argues that at the administrative hearing the ALJ failed to include all of her limitations in the hypothetical question posed to the vocational expert.  The court addresses each of these arguments below.

Plaintiff contends that the ALJ improperly weighed the medical evidence in concluding that plaintiff was not disabled prior to March 2, 2003.[2]  The ALJ found plaintiff disabled as of that date because her exertional capacity for light work and her vocational factors beginning at that time directed such a decision under medical-vocational rule 202.06.[3]  The ALJ also concluded that plaintiff was disabled beginning January 13, 2005, due to her inability to perform all the basic mental demands of unskilled work.  (Tr. at 27.)  Prior to March 2, 2003, however, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform substantially the full range of light work.  (Tr. at 25.)  More specifically, the ALJ found plaintiff could lift 10 pounds, work with her left arm close to her body, walk/stand six hours, sit six hours, occasionally climb and crawl but avoid climbing ropes/ladders scaffolds, avoid overhead reaching on the left, and avoid moderate exposure to working at heights and around moving machinery, and that she had no other postural, manipulative or environmental limitations and no communicative or visual limitations. (Tr. at 26.)

Finally, plaintiff argues that the ALJ's assessment of her RFC prior to March 2, 2003, is not supported by the medical evidence of record including the opinions of her treating physicians.[4]

/////

/////

---

[2] Plaintiff turned fifty-five years old on that date, and was thus a person of "advanced age" under the regulations at that time.  Agency regulations consider "advanced age" (age fifty-five or older) as "the point where age significantly affects a person's ability to do substantial gainful activity."  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990) (citing 20 C.F.R. § 404.1563(d)).

[3] That rule directs a decision of "disabled" for persons of advanced age, with a high school education, who have the capacity to perform "light work" and who have no transferrable skills.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[4] Residual functional capacity is what a person "can still do despite [the individual's] limitations."  20 C.F.R. § 416.945(a) (1996).  See also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

6

## I. Crediting the Treating Physician's Opinions

It is well-established that the medical opinion of a treating physician is entitled to special weight. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

As set forth above, the ALJ determined that plaintiff had the RFC to perform substantially the full range of light work prior to March 2, 2003. (Tr. at 26.) Plaintiff argues that in reaching this determination, the ALJ improperly discounted the opinion of her treating physician, Dr. Michael Nielson, M.D. Dr. Nielson treated plaintiff in connection with an on-the-job injury that occurred in September 2001. His treatment included surgery on plaintiff's torn rotator cuff and ruptured biceps tendon in November 2001, as well as post-operative care lasting through early 2004. (Tr. at 178-96, 199-235, 303-10.) Although on February 21, 2002, Dr. Nielson indicated that plaintiff could return to modified work duty (restricted to lifting no greater than two pounds, with no overhead activity of her left shoulder and no pushing or pulling of more than five pounds), he later changed his opinion, noting that plaintiff's attempts to perform modified work were unsuccessful and aggravated her symptoms, including pain. (Tr. at 189, 203.) On August 1, 2002, Dr. Nielson opined that plaintiff was "permanent and stationary" and that she would not be able to return to any job that "worked overhead." (Tr. at 199.) He opined that plaintiff "cannot lift on a regular basis more than 5 pounds." (Id.) He further commented

7

that she should not work in a static position for more than a few minutes at a time. Although he initially thought vocational rehabilitation might improve these limitations, rehabilitation was ultimately unsuccessful.[5] (Tr. at 199, 249, 303.)

On January 28, 2003, another of plaintiff's treating physicians, Dr. Richardson, opined that plaintiff should lift and carry no more than 10 pounds maximum, primarily right-handed, and that any repetitive tasks should be done below mid-chest height and close to her body. (Tr. at 248.) The opinion of consultative orthopedic physician, Steve McIntire, M.D., reflected a similar (although slightly more optimistic) opinion regarding plaintiff's limitations. In this regard, on September 6, 2003, Dr. McIntire examined plaintiff and opined that she should not engage in lifting objects above chest height with her left arm, and was limited to lifting not more than five pounds with just the left hand and arm, but that she could lift twenty pounds frequently or thirty pounds occasionally, relying predominantly on her right arm. (Tr. at 266-67.)

In assessing plaintiff's RFC, the ALJ recited the course of plaintiff's treatment and the comments of her treating physicians, Dr. Nielson and Dr. Richardson, as well as the opinion of Dr. McIntire. (Tr. at 16-24.) After summarizing the medical evidence, the ALJ wrote:

/////

/////

/////

/////

---

[5] The court notes that there appear to be treatment notes missing from the records of Dr. Fred D. Richardson. In this regard, on January 28, 2003, Dr. Richardson noted Dr. Nielson's August 1, 2002, assessment that plaintiff had "reached permanent and stationery status." Dr. Richardson indicated that plaintiff should continue physical therapy, but in the event progress was marginal, he would "probably . . . concur regarding vocational rehabilitation, and decrease the frequency of followup as part of future medical plans." (Tr. at 249.) However, the record is devoid of any follow-up opinion on this matter from Dr. Nielson. According to plaintiff's testimony and Dr. Nielson's records, plaintiff's rehabilitation was ultimately unsuccessful. (Tr. at 303, 341.)

8

> In reaching these findings, the undersigned determined that the functional assessments by her treating physicians combined with the SA determinations and functional assessment of Dr. McIntire *were the most reliable in establishing her physical residual functional capacity and all basically indicated she was limited to a modified range of light work.*

(Tr. at 24.) (emphasis added).

In this paragraph of the decision the ALJ purports to rely on, rather than reject, the opinions of Drs. Nielson and Richardson. Inexplicably, however, the ALJ failed to explain why the decision's RFC assessment of plaintiff did not reflect the limitations assessed by these doctors, particularly Dr. Nielson's opinion that plaintiff should not lift more than five pounds on a regular basis. (Tr. at 199.) The ALJ's assessment that plaintiff had the RFC to lift 10 pounds, but should avoid overhead reaching (tr. at 23), does not reflect the treating physicians' opinions that plaintiff should not regularly lift more than five pounds with her left arm, that lifting or carrying should be done primarily with her right hand, that repetitive tasks should be performed below mid-chest level, and that plaintiff should not work in a static position with her shoulder abducted and flexed for more than a few minutes at a time. Although the ALJ purportedly relied on the opinions of plaintiff's treating physicians in assessing her residual functional capacity, the ALJ's ultimate RFC assessment does not reflect these very specific limitations. This failure to articulate specific, legitimate reasons for ignoring the opinions of plaintiff's treating physicians as to plaintiff's limitations constitutes error.

## II. Consideration of Plaintiff's Mental Condition as a Severe Impairment

Plaintiff next contends that the ALJ erred at step two of the sequential evaluation by finding that plaintiff did not have a severe mental impairment prior to January 13, 2005. Specifically, plaintiff argues that the ALJ improperly rejected the opinion of Dr. Alfred P. French, M.D., an examining psychiatrist. After examining plaintiff and administering numerous psychological tests to her in March and April of 2003, Dr. French opined that due to depression, anxiety, racing thoughts, attentional problems, fear and agitation, plaintiff's "ability to

9

1  comprehend and follow directions, perform simple and repetitive tasks and maintain a work pace
2  appropriate to a given load is <u>severely impaired</u>."   (Tr. at 244) (emphasis in original)).

3         It is well-established that at step two of the sequential evaluation process the ALJ
4  must determine if the claimant has a medically severe impairment or combination of
5  impairments.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing <u>Yuckert</u>, 482 U.S.
6  at 140-41).  The purpose of the step two analysis is merely to identify claimants whose medical
7  impairment is so slight that it is unlikely they would be disabled even if age, education, and
8  experience were taken into account.  <u>Yuckert</u>, 482 U.S. at 153.  Thus, "[t]he step-two inquiry is a
9  <u>de minimis</u> screening device to dispose of groundless claims."  <u>Smolen</u>, 80 F.3d at 1290.

10         Here, the ALJ rejected Dr. French's diagnosis of depression and generalized
11  anxiety disorder, stating that it was not supported by the State Agency determination and that
12  there was no evidence in Dr. Nielsen's treatment records showing that plaintiff was depressed or
13  suffered from anxiety.  (Tr. at 17, 289-302.)  The ALJ further remarked that Dr. French's
14  assessment was inconsistent with the psychiatric consultative evaluation performed by Dr. Mehdi
15  Moghaddas, M.D., and that there was no evidence that plaintiff had sought or received any
16  mental health treatment.  (Tr. at 17-18.)

17         However, the ALJ credited the January 13, 2005, opinion of psychologist Barry N.
18  Finkel, Ph.D., who diagnosed plaintiff with mood disorder secondary to chronic pain with major
19  depressive-like features and Axis II borderline intellectual functioning.  (Tr. at 24, 314-15.)
20  Based on Dr. Finkel's opinion, the ALJ determined that "beginning January 13, 2005," plaintiff
21  had the severe impairment of "mood disorder secondary to chronic pain with major depressive-
22  like features borderline intellectual functioning."  (Tr. at 19.)

23         The ALJ offers no explanation as to why he found Dr. Finkel's opinion, which
24  reflected findings and conclusions similar to those of Dr. French, more reliable than Dr.
25  /////
26  /////

1  French's. Neither does the ALJ explain how he concluded that plaintiff suddenly developed

2  "borderline intellectual functioning" in less than two years time.[6]

3        The court further notes that Dr. French spent the most time of any of the

4  psychological consultants examining plaintiff, and that his opinion was supported by independent

5  clinical findings based on numerous tests. (Tr. at 236-46.) The reasons the ALJ gave for

6  discrediting Dr. French's opinion were that plaintiff was not being treated for depression, that her

7  orthopedic physician's records contained no evidence of mental distress, and that Dr. French's

8  opinion was inconsistent with both the SA evaluation and the opinion of consultative examining

9  psychiatrist, Dr. Moghaddas. (Tr. at 17.) Significantly, none of these reasons had changed at the

10 time of Dr. Finkel's assessment which the ALJ chose to credit. At the time of Dr. Finkel's

11 examination, plaintiff was still not being treated for depression. Moreover, at that time Dr.

12 Nielson's records still contained no notations (positive or otherwise) regarding plaintiff's mood.

13 The non-examining agency consultant's mental evaluation of plaintiff, which consisted of a form

14 with few instructive comments, had not changed. (Tr. at 289-301.) Nor was there any change in

15 Dr. Moghaddas's finding that plaintiff had "adjustment disorder with depressed mood" changed.[7]

16 (Tr. at 271.)

17       The ALJ did not explain in the decision why Dr. Finkel's opinion regarding

18 plaintiff's mental impairment is more credible than that of Dr. French, who reached a similar

19 conclusion two years earlier. Accordingly, the ALJ's articulated reasons for rejecting the opinion

---

[6] This finding by Dr. Finkel is consistent with Dr. French's earlier findings that plaintiff was severely impaired in her ability to perform complex and varied tasks, comprehend and follow instructions, perform simple and repetitive tasks, and maintain a work pace appropriate to a given load. (Tr. at 244-45.)

[7] Unlike Dr. French's evaluation, Dr. Moghaddas's finding that plaintiff had "adjustment disorder with depressed mood" was not based on extensive testing. Nonetheless, the Diagnostic and Statistical Manual of Mental Disorders 683 (4th ed. 2000) ("DSM IV"), describes "adjustment disorder with depressed mood" as the development of emotional or behavioral symptoms that are clinically significant as evidenced by marked distress and significant impairment in social or occupational functioning.

of Dr. French's evaluation were not legally sufficient. The opinion of examining physician Dr. French should be credited as a matter of law. Lester, 81 F.3d at 830, 843 (a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate*"* reasons, and failure to provide adequate reasons warrants crediting that opinion as a matter of law). The ALJ's failure to properly assess all of plaintiff's severe impairments at step two impacts the remainder of the ALJ's sequential evaluation, including the impact of that impairment in combination with plaintiff's other impairments on plaintiff's ability to perform work.

### III. Rejection of Plaintiff's Testimony

Next, the court addresses plaintiff's contention that the ALJ failed to credit fully her allegations regarding the limitations that her conditions placed upon her. In evaluating a claimant's subjective testimony regarding pain and the severity of the claimant's symptoms, an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen, 80 F.3d at 1285. Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Nonetheless, an ALJ's decision to reject a claimant's subjective testimony regarding the severity of her symptoms must be supported by specific findings. Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985)). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan, 169 F.3d at 599.

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because those symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Rather,

"the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281. See also Light, 119 F.3d at 792; Reddick, 157 F.3d at 722. Although the ALJ may rely, in part, on his or her own observations, see Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), the ALJ cannot substitute such observations for medical diagnosis, Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Here, plaintiff's medical records document conditions which might reasonably be expected to cause the symptoms she allegedly suffered. However, the ALJ's reasons for not fully crediting plaintiff's testimony in this regard are flawed as they are neither clear nor convincing.

The ALJ found plaintiff's complaints of pain and problems with her upper extremities to be not fully credible because the "SA determined in March and September 2003, that she could lift 20 pounds occasionally, 10 pounds frequently and lift no more than five pounds with the left arm." (Tr. at 20.) As discussed above, these state agency findings are not consistent with the stricter limitations prescribed by plaintiff's treating physicians. Further, the ALJ discredited plaintiff's allegations of "pain and upper extremity complaints" because "daily activities indicated she performed light housework" that was "consistent with light work." (Tr. at 20, 22.) The court is perplexed by this basis relied upon by the ALJ in discrediting plaintiff's testimony. The record in fact indicates that plaintiff actually did very little housework, was limited in what activities she could engage in, and suffered pain for several hours after completing chores such as loading the dishwasher. (See, e.g., Tr. at 107-14.) None of plaintiff's

/////
/////
/////
/////
/////
/////

1  activities meet the regulatory definition of "light work."⁸  Further, the record reflects that
2  plaintiff's treating physician, Dr. Nielson, documented that plaintiff continued to suffer a great
3  deal of pain in her left shoulder even as late as 2004, that he continued to prescribe pain
4  medication for her, and that the degree of pain in her arm would "preclude her from using that as
5  a part of any work activity that she could do." (Tr. at 303.)  The ALJ cited the "success" of
6  plaintiff's 2002 surgery and her return to modified work thereafter as reasons for not fully
7  crediting her testimony regarding the severity of her symptoms.  However, as explained above,
8  plaintiff's attempts to return to work and rehabilitate proved to be unsuccessful.  (Tr. at 21, 199,
9  249, 303.)

10  The ALJ discredited plaintiff's subjective "mental complaints" prior to January
11  13, 2005, for the same reasons the opinion of examining psychiatrist Dr. French was rejected.  As
12  discussed above, the ALJ erred by rejecting that examining psychiatrist opinion.  This error in
13  turn undermines the ALJ's reasons for discrediting plaintiff's allegations regarding her "mental
14  complaints" prior to January 13, 2005.

15  Finally, the ALJ discredited plaintiff's complaints regarding pain in her upper
16  right extremity allegedly caused by favoring her right arm.  (Tr. at 22.)  The ALJ noted that there
17  were no diagnostic studies regarding plaintiff's right arm and that she was not seeking treatment
18  for these complaints.  However, the record shows that by late 2002, plaintiff reported to Dr.
19  Richardson that she had developed "increased symptoms of pain and tingling" in the "right upper

---

⁸ 20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

14

extremity below the level of the elbow." (Tr. at 253.) Upon testing Dr. Richardson noted plaintiff experienced moderate discomfort at the ends of range of flexion, abduction and extension on the right side, and that these ranges were somewhat limited. (Tr. at 254.) The treatment notes regarding plaintiff's right shoulder pain are minimal. However, the ALJ erred in discrediting plaintiff's testimony as to the severity of these symptoms merely due to a lack of abundant objective medical evidence. Contrary to the ALJ's suggestion, the record contained evidence that plaintiff sought help for right shoulder pain.

In sum, the reasons articulated by the ALJ for discrediting plaintiff's testimony regrading her subjective symptoms were based on improperly credited medical opinions and unsupported, generalized conclusions regarding plaintiff's abilities. As such, they were not clear and convincing. See Reddick, 157 F.3d at 722 ("[T]he Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. General findings are insufficient[.]") (internal quotations and citations omitted). As explained below, this error in turn affects the validity of the hypothetical questions posed by the ALJ to the vocational expert.

### IV. Including All Limitations in Hypothetical

When posing hypothetical questions to a vocational expert, the ALJ is required to set out all of the limitations and restrictions of the claimant. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); Gallant, 753 F.2d at 1456. If the assumptions in a hypothetical question are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value. Id. An ALJ need not include all claimed impairments in a hypothetical question, but must make specific findings delineating the basis for rejecting any of the claimant's subjective complaints not included in the hypothetical. See Light, 119 F.3d at 793.

As set forth above, the ALJ erred by failing to acknowledge plaintiff's limitations as found by treating and examining sources, by finding that plaintiff had a severe mental impairment only after January 13, 2005, and by providing legally insufficient reasons for

discrediting plaintiff's testimony. As a result, the evidentiary value of the vocational expert's testimony the ALJ relied on in assessing the number of jobs available to plaintiff prior to March 2, 2003, is undermined.

**V. The Proper Remedy**

In light of the errors identified above, reversal is required and the appropriate remedy must be determined. The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). In this regard, the Ninth Circuit has stated: "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (quoting Varney v. Sec'y of Health & Hum. Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401. Where, as here, there were no legitimate reasons given for disregarding the treating physician's opinions or plaintiff's testimony, there is no need to remand the case for additional findings. See Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) (remanding for award of benefits where the ALJ erroneously rejected plaintiff's subjective pain testimony); Moore v. Commissioner, 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ "improperly rejected testimony [plaintiff's] three examining physicians"); Holohan, 246 F.3d at 1211; Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

Plaintiff filed her application nearly four years ago. No useful purpose would be served by delaying this matter further for additional administrative proceedings. Therefore, this matter will be remanded with the direction to grant benefits.

/////

/////

**CONCLUSION**

Accordingly, the court HEREBY ORDERS that:

1. Plaintiff's motion for summary judgment and/or remand is granted;

2. Defendant's cross-motion for summary judgment is denied; and

3. The decision of the Commissioner is reversed and this case is remanded with the direction to grant benefits.

DATED: July 5, 2007.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:mb
gilbert0825.ord.wpd